UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SEYNI IDE FODI, | ) <br> ) <br> ) |
| Plaintiff, | )    Civ. No. 1:26-cv-560 <br> ) |
| v. | ) <br> ) |
| KRISTI NOEM, et al, | ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I.  **<u>INTRODUCTION</u>**[1]

Plaintiff, Seyni Ide Fodi (A#249-137-392) is a Nigerien asylum seeker and rare language speaker who faces imminent removal despite never receiving the "full and fair" process to which he is entitled under both the Constitution and the immigration statute. In 2024, he fled persecution from the Nigerien police and government after being targeted by the government and military for protesting a military coup d'etat. Mr. Ide Fodi is fluent only in the language of Nigerien Zarma and cannot read or write in any language, yet was not provided with adequate language support by the government in violation of his rights to due process. The Department of Homeland Security (DHS) released Mr. Ide Fodi from custody on January 25, 2025. Mr. Ide Fodi complied with all ICE release requirements including updating his address. Nevertheless, an immigration judge in Denver ordered him removed *in absentia*, because Mr. Ide Fodi did not understand that he needed to notify the immigration court of his change of address separately from ICE. After he was arrested by ICE on October 11, 2025, and detained, Mr. Ide Fodi was finally able to secure *pro bono* counsel who filed a motion to reopen his removal order. The immigration judge denied this motion on December 5, 2025 in a brief written summary order and did not provide any reasoning related to Mr. Ide Fodi's arguments. On December 10, 2025, Mr. Ide Fodi filed an appeal of the decision to the motion to reopen. Briefing has been completed by both parties and this motion remains pending. On December 20, 2025 Counsel also filed an emergency stay of removal with this motion to reopen, but the BIA refused to adjudicate it at that time because removal was not imminent.

On February 24, 2025, in the night, ICE began the process to immediately remove Mr. Ide Fodi despite his pending appeal and stay of removal. Counsel repeatedly tried to contact the emergency stay of removal office and on February 25, 2026, at 9:14 am, the BIA denied the

---

[1] This brief incorporates by reference the exhibits and citations in the Complaint.

request for a stay of removal with no reasoning. That same morning, ICE informed counsel that it was immediately removing Mr. Ide Fodi by putting him on a plane to Ethiopia, Flight ET501 which was scheduled to leave at 10 am. As detailed in the complaint, counsel has contacted multiple ICE offices and has been told that Mr. Ide Fodi has not yet put on a plane. Currently, counsel does not know where Mr. Ide Fodi is. Counsel contacted the Washington Field Office for ICE at approximately 10:07 am and 10:16 am, and ICE informed counsel that he was still in custody at the Washington Field Office.

Given the pendency of his BIA appeal of the motion, Mr. Ide Fodi seeks to preserve the status quo through a limited stay of removal from this Court. If, instead, ICE carries out this summary removal to Niger while his BIA appeal is pending, he could be sent back to meet the fate—persecution, torture, or even death at the hands of police and government officials—that his motion to reopen seeks to avoid. That possibility is both "Kafkaesque" and unlawful. *See Devitri v. Cronen*, 289 F. Supp. 3d 287, 294 (D. Mass. 2018), *vacated as moot*, Judgment, No. 18-1281 (1st Cir. Feb. 6, 2019); *see also Patel v. Barr*, No. 20-3856, 2020 WL 4700636, at *8 (E.D. Pa. Aug. 13, 2020) ("[T]he risk of persecution leads us to conclude that [the plaintiff's] ability to meaningfully participate in his case could be severely impaired if he were deported."), *reconsideration denied*, 2020 WL 6888250 (E.D. Pa. Nov. 24, 2020). Therefore, it is essential that this Court intervene and provide a limited, protective stay of removal in the form of a temporary restraining order ("TRO") and preliminary injunction ("PI").

## II.     **This Court Has Jurisdiction to Consider Mr. Ide Fodi's Complaint.**

This Court has jurisdiction to consider Mr. Ide Fodi's lawsuit. There is a "well-settled and strong presumption" that Congress intends removal-related decisions to be reviewable. *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (cleaned up). That presumption "can

only be overcome by clear and convincing evidence of congressional intent to preclude judicial review." *Id.* (cleaned up). While the government may assert jurisdictional bars to the claims here, there is no such clear and convincing evidence that any provision strips this Court of jurisdiction to consider Mr. Ide Fodi's lawsuit.

### A.     Section 1252(g) does not strip jurisdiction over Mr. Ide Fodi's lawsuit.

Section 1252(g) provides that, with the exception of a petition for review, no court has jurisdiction to review any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). This provision does not apply to Mr. Ide Fodi's challenge for two independent reasons.

First, for this jurisdictional bar to apply, the government must have "made a decision or taken an action" that the noncitizen is challenging. *Ahmed v. Holder*, 12 F. Supp. 3d 747, 755 (E.D. Pa. 2014). Here, because Mr. Ide Fodi is not challenging any decision or action but rather challenging the BIA's inaction on his motion, there is no "decision or action" for purposes of § 1252. *See, e.g.*, *Saleem v. Keisler*, 520 F. Supp. 2d. 1048, 1051 (W.D. Wis. 2007) (concluding as much in the context of identical language in § 1252(a)(2)(B)(ii));[2] *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 934 (D. Minn. 2011) (noting "the likely inapplicability of § 1252(g) to claims of inaction"). Indeed, in a very similar lawsuit filed by a noncitizen to challenge the BIA's failure to adjudicate his motion to reconsider, this Court concluded that the noncitizen was "challenging the BIA's failure or refusal to decide his motion," rather than a "decision or action of the BIA," so § 1252(g) did not apply. *Patel*, 2020 WL 4700636, at *5. The same reasoning applies here.

---

[2] We note that this court held that "the court's analysis of § 1252(a)(2)(B) in *Saleem* applies with equal weight to § 1252(g). *See Patel*, 2020 WL 4700636, at *5.

4

Second, § 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). Here, Mr. Ide Fodi is challenging the BIA's failure to adjudicate his appeal of the motion to reopen, not the decision to commence proceedings, adjudicate cases, or execute removal orders. Accordingly, § 1252(g) does not bar this Court from reviewing his lawsuit. *See Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 134 (3d. Cir. 2012).[3]

### B. Section 1252(b)(9) does not strip jurisdiction over Mr. Ide Fodi's lawsuit.

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). This provision does not apply to Mr. Ide Fodi's lawsuit for two independent reasons.

First, § 1252(b)(9) only applies to channel challenges to a removal order into a petition for review. But Mr. Ide Fodi is merely challenging the BIA's *failure* to adjudicate his appeal of the motion. Because he is not challenging his removal order, § 1252(b)(9) is not applicable here. *See Patel*, 2020 WL 4700636, at *3–4 (concluding that § 1252(b)(9) did not apply to lawsuit

---

[3] *Tazu v. Attorney General of the United States*, 975 F.3d 292 (3d Cir. 2020) is not to the contrary. That case involved a noncitizen who challenged the timing of his removal in a Third Circuit appeal of a habeas order while simultaneously litigating a petition for review in the Second Circuit. 975 F.3d at 295-96. The Third Circuit concluded that the noncitizen's claim was barred by § 1252(g) because it challenged the decision to execute the removal order. *Id.* at 296-97. But in *Tazu*, the noncitizen did not "challenge Government actions taken before the Attorney General tried to execute" the removal order. *Id.* at 298. By contrast, Mr. Niang is challenging a government action taken before the execution of his removal order—specifically, the BIA's inaction in failing to adjudicate his appeal. And unlike the noncitizen in *Tazu*, Mr. Niang lacks any forum to bring his claim because, without a final BIA decision in his case, he cannot file a petition for review. *See Patel*, 2020 WL 6888250, at *3 (distinguishing *Tazu* because noncitizen in *Tazu* could get judicial review via his petition for review filed in a different circuit). Thus, § 1252(g) does not bar this lawsuit.

challenging the BIA's failure to adjudicate his motions to reopen and reconsider because noncitizen was not challenging his order of removal).

Second, § 1252(b)(9) does not bar review of claims where a noncitizen cannot meaningfully get review on a petition for review. "[T]he point of [§ 1252(b)(9)] is to channel claims into a single petition for review, not to bar claims that do not fit within that process." *E.O.H.C. v. Sec'y of U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020). Accordingly, "[w]hen a detained alien seeks relief that a court of appeals cannot meaningfully provide on petition for review of a final order of removal, § 1252(b)(9) does not bar consideration by a district court." *Id.* at 180. Here, Mr. Ide Fodi seeks relief that a court of appeals cannot meaningfully provide on a petition for review. Indeed, Mr. Ide Fodi cannot even file a petition for review because the BIA has not ruled on Mr. Ide Fodi's appeal. *See* 8 U.S.C. § 1252(d)(1) (requiring the noncitizen to exhaust administrative remedies). And because Mr. Ide Fodi faces imminent deportation, he cannot get meaningful relief through a later petition for review. *See infra* at 20; *see also Chaudhry v. Barr*, No. 2:19-cv-00682-TLN-DMC, 2019 WL 2009307, at *4 (E.D. Cal. May 7, 2019) (granting TRO until motion to reopen adjudicated by the BIA and stating that "[o]nce [respondent] is deported, it will be difficult if not impossible for [respondent] to pursue his motion from abroad"). Thus, § 1252(b)(9) does not bar this lawsuit.[4]

---

[4] Again, *Tazu* does not compel a contrary result. In that case, the noncitizen had a pending petition for review. 975 F.3d at 295. By contrast, here, Mr. Niang cannot bring a petition for review into which his claims may be channeled. *See Patel*, 2020 WL 6888250, at *3 (E.D. Pa. Nov. 24, 2020) (distinguishing *Tazu* on this grounds). For similar reasons, § 1252(a)(5) does not bar review of Mr. Niang's claims. That section provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). Like § 1252(b)(9), § 1252(a)(5) channels challenges to a final order of removal into one petition for review. But as explained above, Mr. Niang is not challenging his order of removal but rather the BIA's failure to adjudicate his appeal. Accordingly, because he is not challenging an "order of removal," § 1252(a)(5) does not apply to his case. *See Patel*, 2020 WL 4700636, at *3; *see also Las Americas Immigrant Advoc. Ctr. v.*

6

As such, this Court has jurisdiction to consider Mr. Ide Fodi's lawsuit.

### III. This Court Should Grant Mr. Ide Fodi a Temporary Restraining Order.

A TRO is appropriate because Plaintiff's imminent removal would preclude him from fully litigating the complaint for a writ of mandamus pending before this Court, as well as his motion to reopen before the BIA and any additional subsequent proceedings before EOIR or the circuit court of appeals on a petition for review.

The Court must consider four factors in determining whether to grant a motion for preliminary injunction or temporary restraining order: "(1) whether the movant has a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the nonmoving party if the injunction is granted; and (4) whether granting the injunction is in the public interest." *Highmark, Inc.* v. *UPMC Health Plan, Inc.*, 276 F.3d 160, 170–71 (3d Cir. 2001); *Zaslow v. Coleman*, 103 F. Supp. 3d 657, 662 (E.D. Pa. 2015) (holding that standard for issuing a TRO is same as the standard for a preliminary injunction).

These factors weigh decidedly in favor of granting Plaintiff's requested TRO and preliminary injunction. Mr. Ide Fodi is likely to prevail on the merits of his statutory and constitutional claims asserted in the complaint for a writ of mandamus. Mr. Ide Fodi will be irreparably harmed by deportation to a country where he fears serious harm or death; granting relief will not result in any harm to the non-moving party; and the public interest is served by

---

*Trump*, No. 3:19-cv-02051, 2020 WL 4431682, at *1207 (D. Or. July 31, 2020). Moreover, like § 1252(b)(9), § 1252(a)(5) merely channels claims into a petition for review. As the Third Circuit held in *E.O.H.C.*, a channeling provision should not bar review where, as here, the noncitizen is not able to get meaningful relief through a petition for review. 950 F.3d at 186.

requiring the government to fulfill its nondiscretionary duties and by allowing Mr. Ide Fodi to realize the statutory and constitutional rights to which he is entitled.

> **A.   Mr. Ide Fodi is Likely to Succeed in Demonstrating that the BIA's Failure to Adjudicate His Pending Motion to Reopen Violates His Statutory and Constitutional Rights.**

Mr. Ide Fodi is likely to succeed on the merits of his mandamus and APA claims that summary removal would obviate any meaningful opportunity for him to be heard on his pending appeal to the BIA, and would violate his procedural due process rights and subject him to a high risk of persecution, torture, and violence because of his political beliefs, in violation of the INA, 8 U.S.C. § 1101 *et seq.,* and the United States' treaty obligations under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988).

Under the INA, ICE *may not* remove an individual to a country where "the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] . . . political opinion." 8 U.S.C. § 1231(b)(3)(A). Removal becomes unlawful in violation of the INA where the noncitizen demonstrates that it "is more likely than not that he or she would be persecuted on account of . . . political opinion" if removed. 8 C.F.R. § 208.16(b)(2). Related relief is also available in the form of withholding or deferral of removal under CAT. 8 C.F.R. § 208.16(c)(4).

A decision by the BIA is a statutory prerequisite to seek judicial review of Mr. Ide Fodi's claims that the immigration judge committed legal errors. 8 U.S.C. §§ 1252(a) (judicial review over final orders of removal); 1252(b)(6) (judicial review of motions to reopen); 1101(a)(47)(B) (definition of a final order); 1252(d)(1) (exhaustion of administrative remedies). The INA grants special solicitude for noncitizens who are seeking relief from persecution or torture, such as Mr. Ide Fodi.

In addition, the Due Process Clause and the INA grant noncitizens the right to a *fair* proceeding before they are removed from the country. *See*, *e.g.*, *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Khouzam v. Att'y Gen. of the U.S.*, 549 F.3d 235, 256–57 (3d Cir. 2008); *see also* 8 U.S.C. § 1158(a)(1). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting, *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Without a limited, protective stay of removal from a District Court, the motion-to-reopen process would be wholly unfair and insufficient for people facing imminent, summary removal—in violation of the Due Process Clause.

People like Mr. Ide Fodi have no protection against summary removal through their pending motions at the BIA to stay removal. The mere filing of *any* stay motion with the BIA does *not* require ICE to halt a removal. Instead, the BIA must actually *grant* the stay motion before ICE has any legal obligation to halt removal. No legal standard requires that the BIA rule on *any* stay request before ICE causes someone's removal.

Furthermore, people like Mr. Ide Fodi can only seek a stay of removal from a circuit court of appeals in connection with a petition for review—which cannot be filed unless and until the BIA denies a pending motion to reopen removal proceedings. *See* 8 U.S.C. § 1252(d)(1); *Davis v. United States*, No. 06-cv-04079, 2007 WL 3342407, at *8 (E.D. Pa. 2007) (concluding that noncitizen had not exhausted administrative remedies because "proceedings following his motion to reopen are pending"). EOIR policy states that the BIA's stay authority should "safeguard [a noncitizen] from being inappropriately deported before he is heard on his motion to reopen." *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10321 (Mar. 6, 1997). Current

EOIR policy mandates that when "a case requires neither the preparation of a transcript nor the service of a briefing schedule—e.g. a motion to reopen filed directly with the Board—the Board should forward the case for merits review within three days of the receipt of the [record of proceeding]." *See* James R. McHenry, Director, EOIR, PM 20-41, Case Processing at the Board of Immigration Appeals, at 6 (Oct. 1, 2019), https://www.justice.gov/eoir/page/file/1206316/download.

Without a protective stay of removal from a District Court, ICE can summarily remove people like Mr. Ide Fodi and thereby obviate any meaningful opportunity for them to continue pursuing a pending appeal and motion to reopen removal proceedings. People whose motions to reopen are granted following their removal frequently are unable to return to the United States even from safe countries due to factors such as refusal of agencies to issue travel documents; noncitizens receiving conflicting information about return from the Department of State and the Department of Homeland Security; agency staff imposing limitations on the types of cases eligible for return; and by U.S. officials' bald refusal to effect return. Indeed, the Solicitor General's office informed the Supreme Court, subsequent to the Court's decision in *Nken v. Holder*, 556 U.S. 418 (2009), that it was "not confident that the process for returning removed aliens, either at the time its brief was filed or during the intervening three years, was as consistently effective as the statement in its brief in *Nken* implied." Ltr. From Michael R. Dreeben, Deputy Solicitor Gen., to William K. Suter, Clerk of the Supreme Court, at 4 (Apr. 24, 2012).[5]

Additionally, regulations require the BIA to issue decisions on the merits of cases "with a priority for cases. . . involving detained aliens." 8 C.F.R. § 1003.1(e)(8).

---

[5] https://www.justsecurity.org/wp-content/uploads/2018/05/SG_Letter-nken-v-holder.pdf.

Despite its stated policy of processing motions to reopen rapidly and its stated goal of ensuring that noncitizens are not deported before the merits of a motion to reopen has been heard, the BIA has failed to adjudicate Mr. Ide Fodi's appeal of the motion to reopen, which is based on a fear of serious harm and torture if returned to his home country, while simultaneously denying a stay of removal and allowing deportation to that same country.

### B. In the Absence of Immediate Injunctive Relief, Mr. Ide Fodi Will Suffer Irreparable Harm.

Mr. Ide Fodi will suffer multiple forms of irreparable harm if he is deported while his appeal of the motion is pending before the BIA and he does not have an opportunity to obtain judicial review over the agency's errors in his case.

First, the deprivation of any "fundamental constitutional right constitutes irreparable injury." *Buck v. Stankovic*, 485 F. Supp. 2d 576, 586 (M.D. Pa. 2007). And no right is more fundamental than the right to freedom from unlawful restraint and deportation. *Cf. Susquehanna Valley All. v. Three Mile Island Nuclear Reactor*, 619 F.2d 231, 245 (3d Cir. 1980) ("[P]laintiffs' . . . allegation of irreparable harm to their constitutional right to 'life and liberty' meets the irreparable harm standard.").

As discussed in his Complaint, the BIA's failure to adjudicate Mr. Ide Fodi's appeal of the motion has frustrated his ability to seek judicial review of a final order of removal from the agency and to seek a corresponding stay of removal from the Court of Appeals. This failure has not only violated the INA and APA but has also violated Mr. Ide Fodi's constitutional due process rights to be meaningfully heard on the substance of his motion. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Sean B. v. McAleenan*, 412 F. Supp. 3d 472, 490 (D.N.J. 2019) (granting a stay based on "the likelihood of a violation of Petitioner's procedural and constitutional rights if it is not granted" and noting that "Petitioner may or may not prevail before

the BIA or the Court of Appeals; the Constitution requires, however, that his opportunity to put his case be preserved.").

Second, Mr. Ide Fodi's deportation to a country where he fears serious harm or death will cause irreparable injury. Unfortunately, due to Defendants' failure to provide language access to Mr. Ide Fodi in immigration detention and his removal proceedings, Mr. Ide Fodi has not had the opportunity to meaningfully present his compelling asylum claim. Mr. Ide Fodi escaped from Niger in the middle of the night after armed military personnel came to his house in the night after torturing his friend to find his location because he was protesting a military coup d'etat. Deporting Mr. Ide Fodi to a country where he has asserted a fear of return—while a motion based on that very fear is pending—perverts and undermines the effectiveness of that relief. *See De Jesus Martinez v. Nielsen*, 341 F. Supp. 3d 400, 408 (D.N.J. 2018) (finding irreparable harm from deportation if petitioner were deported while application pending) (citing *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) ("We have long recognized that deportation is a particularly severe 'penalty[.]' ") (citation omitted)); *see also Bridges v. Wixon*, 326 U.S. 135, 154 (1945) ("[D]eportation ... visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom."); *cf. E.O.H.C.*, 950 F.3d at 187 (holding that "the constitutional harm from [removing clients to Mexico during the pendency of their immigration proceedings] could not be remedied after a final order of removal.").

Thus, multiple district courts have recognized, in analogous cases, how possible persecution constitutes irreparable harm sufficient to justify injunctive relief against summary removal without an opportunity for meaningful review of a motion to reopen that seeks mandatory protection against removal. *See Sean B.*, 412 F. Supp. 3d at 490 (Jamaican national); *Chaudhry v. Barr*, No. 2:19-cv-00682-TLN-DMC, 2019 WL 2009307, at *4 (E.D. Cal. May 7,

2019) (Pakistani national); *see also* Order, *Oentoyo v. Flores*, Civ. No. 18-1493 (M.D. Pa. July 27, 2018) (Christian Indonesian); Order, *Pangemanan v. Tsoukaris*, No. 18 Civ. 1510 (D.N.J. Feb. 2, 2018) (class of Christian Indonesians); *Devitri*, 289 F. Supp. 3d at 292-99 (same); *see also* Order, *Compere v. Nielsen*, 358 F. Supp. 3d 170, 181–83 (D.N.H. 2019) (Haitian national); *Ibrahim v. Acosta*, Civ. No. 17-24574, 2018 WL 582520, at *6 (S.D. Fla. Jan. 26, 2018) (Somali nationals).

Third, even if Niger posed no danger to Mr. Ide Fodi (which it does), his removal there could still obviate any meaningful opportunity for him to return to the United States in the event his motion to reopen prevails. The government cannot ensure that it will facilitate return to the United States if the BIA grants the motion to reopen, because an effective return policy—one that consistently and predictably returns immigrants who prevail on their petitions for review—does not exist. *See* Ltr. From Michael R. Dreeben, Deputy Solicitor Gen., to William K. Suter, Clerk of the Supreme Court, at 4 (Apr. 24, 2012).[6]

In short, Mr. Ide Fodi faces the irreparable harm of torture or death if returned to Niger without adequate adjudication of his application for humanitarian relief. He also faces irreparable harm to his ability to litigate that application. Therefore, the Court should grant the Motion and stay his removal pending the outcome of this Complaint for Writ of Mandamus.

### C. Mr. Ide Fodi's Injuries Overwhelmingly Outweigh Any Potential Harm to the Defendants.

The third factor for assessing injunctive relief through a TRO and preliminary injunction is "whether there will be greater harm to the nonmoving party if the injunction is granted" *Highmark, Inc.*, 276 F.3d at 170–71. This factor plainly weighs in favor of granting a temporary

---

[6] https://www.justsecurity.org/wp-content/uploads/2018/05/SG_Letter-nken-v-holder.pdf.

injunction here. Whatever minor inconvenience the government might suffer from having to delay Mr. Ide Fodi's deportation so that he can be meaningfully heard on his claim for protection against removal cannot equate to the harm that Mr. Ide Fodi will face if he is deported to a country where he has a substantial and legitimate fear of serious injury or death.

Mr. Ide Fodi's remains detained during these proceedings, thus extinguishing any concerns about flight risk or danger. To whatever extent the government has concerns about continued costs of detention, Mr. Ide Fodi has already been unnecessarily detained for about five months and transferred between multiple facilities in that timeframe. Having chosen to bear the cost of detaining Mr. Ide Fodi for this period of time, the cost to continue detaining Mr. Ide Fodi for several more weeks or months to ensure that his rights are fully vindicated and his case thoroughly adjudicated is a negligible burden. Indeed, the Ninth Circuit concluded that, "faced with such a conflict between [the government's] financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in the plaintiffs' favor." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (quotation omitted).

And if the government feels that the cost of continuing to detain Mr. Ide Fodi is too high, it has the option to release Mr. Ide Fodi on parole or pursuant to various Alternatives to Detention ("ATD") programs. Such programs are highly effective at ensuring that respondents appear for hearings or for deportation. ICE's 2023 data shows that ATD participants had a 99% attendance rate for all EOIR hearings and a 95% attendance rate for their final hearings. *See* ICE, Detention Management, Detention Statistics, FY 2024 Detention Statistics, "ATD FY24 YTD" Tab[7]; *see also Hernandez*, 872 F.3d at 991 (describing "the empirically demonstrated

---

[7] https://www.ice.gov/detain/detention-management (showing a 99.1% attendance rate for all hearings and a 94.0% attendance rate for final hearings in Fiscal Year 2024).

14

effectiveness of such [ATD] conditions at meeting the government's interest in ensuring future appearances"). ICE leadership has lauded ATD programs as "an effective flight risk mitigation tool" that "has demonstrated great success in improving compliance rates for those aliens assigned to the program." Deposition Testimony of ICE ATD Unit Chief Eric Carbonneau, quoted in *Ramirez v. U.S. Imm. & Customs Enf't*, 471 F. Supp. 3d 88, 104 (D.D.C. 2020). And ATD programs provide a less expensive alternative to adult detention; ATD programs cost about $4.11 per day, while it costs the government on average $144 per day to detain a noncitizen in adult detention. DHS, U.S. Immigration and Customs Enforcement, Fiscal Year 2023 Congressional Justification, at ICE - 4, ICE - O&S - 165 (last visited Jan. 24, 2024) (estimating adult bed cost per day for FY 2021).[8]

Furthermore, because the government's failure to adjudicate Mr. Ide Fodi's pending appeal is unlawful under controlling statutory and constitutional authority, it "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from [statutory and] constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Ragbir v. United States*, No. 2:17-CV-1256-KM, 2018 WL 1446407, at *18 (D.N.J. Mar. 23, 2018), *appeal dismissed*, No. 18-2142, 2018 WL 6133744 (3d Cir. Nov. 15, 2018) (government's "interest does not overcome the irreparable injury to [petitioner] absent a stay, or justify denial of a short stay *pendente lite*"); *Patel*, 2020 WL 4700636, at *9 (noting "any inconvenience to the Government from the brief delay is far outweighed by the threat of irreparable harm to [plaintiff]"; *R.I.L-R. v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (stating that the

---

[8] https://www.dhs.gov/sites/default/files/2022-03/U.S.%20Immigration%20and%20Customs%20Enforcement_Remediated.pdf

government "cannot suffer harm from an injunction that merely ends an unlawful practice" (quotation omitted)).

As explained in Mr. Ide Fodi's Complaint, the very situation he faces has been caused by the government's failure to timely adjudicate his appeal of the motion to reopen. If this appeal is granted, then Mr. Ide Fodi's case will be remanded to the immigration court, and he will not be subject to deportation as his order of removal will no longer be administratively final. *See* 8 C.F.R. § 1003.2(i). If the appeal is denied, then Mr. Ide Fodi will be able to file a petition for review and will be entitled to seek a temporary stay of removal. *See* 8 U.S.C. § 1252(a), (b)(3)(B). In either case, once the government has fulfilled its nondiscretionary duty and adjudicated this motion, Mr. Ide Fodi will likely not be subject to an executable final removal order. Any harm to the government has therefore been created by the government alone by failing to adjudicate the motion in a timely manner and should not be held against Mr. Ide Fodi.

### D. The Public Interest Favors the Protection of Mr. Ide Fodi's Statutory and Constitutional Rights.

Finally, the last factor, "whether a preliminary injunction would be in the public interest," also weighs in favor of a TRO and preliminary injunction. *Devitri*, 289 F. Supp. 3d at 297. For the same reason it is difficult for the government to articulate a serious harm in staying deportation for a reasonable period of time to let Mr. Ide Fodi's motion to reopen be reviewed, especially when they do not oppose his appeal, it is hard to see why preserving the status quo would be against the public interest.

Fundamentally, preventing wrongful removal is in the public interest. *Nken*, 556 U.S. at 436. "The public's interest in providing due process for non-citizens to ensure that they are not removed to a country where they will be persecuted is an extremely weighty one," especially for vulnerable rare language speakers who were denied a fair chance at applying for asylum.

16

*Devitri*, 289 F. Supp. 3d at 296 (citing *Kucana v. Holder*, 558 U.S. 233, 242 (2010) ("The motion to reopen is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings.") (quoting *Dada v. Mukasey*, 554 U.S. 1, 18 (2008))). And while the prompt execution of removal orders is also in the public interest, the prompt execution of wrongful and constitutionally invalid removal orders cannot be in the public interest. *Id.* (citing *Nken*, 556 U.S. at 436). Moreover, Mr. Ide Fodi is neither a danger to the community nor has he abused the legal process such that his removal is particularly exigent. *Id.* At bottom, it is in the public interest to ensure the proper functioning of the BIA's adjudication procedures and the due process of law. *See Patel*, 2020 WL 4700636, at *9 ("The public interest is also better served by an orderly court process that assures that [the plaintiff's] invocation of federal court relief is considered before the removal process continues." (quotation omitted)).

For this reason, district courts in this Circuit and across the country have granted temporary stays of removal to permit the courts to adjudicate the underlying complaints or removal proceedings. *See, e.g.*, *id.* at *8-9; *Ragbir*, 2018 WL 1446407, at *19 (granting stay where petitioner's petition for a writ of coram nobis was pending, relying, in part, on preserving his ability to meaningfully participate in his case); *Sean B.*, 412 F. Supp. 3d at 491 (granting stay of removal to allow for adjudication of motion to reopen by BIA for petitioner who asserted a fear of return to Jamaica); *Chaudhry*, 2019 WL 2009307, at *4 (same for petitioner who had asserted a fear of death upon return to Pakistan); *Gbotoe v. Jennings*, No. 17-06819-WHA, 2017 WL 6039713, at *7 (N.D. Cal. Dec. 6, 2017) (enjoining the petitioner's removal pending adjudication of a motion to reopen before the BIA); *Devitri*, 289 F. Supp. 3d 298-99 (ordering a

17

stay of removal in order to maintain status quo pending consideration of habeas challenge to removal).[9]

\*     \*     \*

Because all four factors under the Third Circuit's framework weigh in favor of Mr. Ide Fodi, the Court should grant his motion for a TRO and preliminary injunction. Doing so would preserve the status quo and afford Mr. Ide Fodi a fair and meaningful opportunity to be heard on his claim for mandatory protection against removal, particularly after leaping through so many hurdles from the lack of language access and ICE's interference with accessing his counsel.

## IV.  CONCLUSION

For the foregoing reasons, the Court should grant Mr. Ide Fodi's motion for a TRO and preliminary injunction and order the Defendants to stay Mr. Ide Fodi's deportation while his Complaint for a Writ of Mandamus is pending, or until they have adjudicated his motion to reopen.

Date: February 25, 2026

/s/ James D. Jenkins
James D. Jenkins (VSB #96044)
P.O. Box 6373
Richmond, VA 23230
T: (804) 873-8528
E: jjenkins@valancourtbooks.com

/s/ Lilah Thompson*
Lilah R. Thompson (PA 324718)

---

[9] *Sied v. Duke*, 17-cv-06785-LB, 2017 WL 6316821, at *3 (N.D. Cal. Dec. 11, 2017) (ordering a stay of removal pending consideration of habeas challenging removal, to allow time for Petitioner to file a motion to reopen and noting that counsel had not yet been able to visit with Petitioner in detention); *Ivan A. v. Anderson*, No. CV 20-2796 (KM), 2021 WL 858608, at *5 (D.N.J. Mar. 8, 2021) (noting that "Petitioner sought (and received) . . . a stay of removal pending adjudication of his appeal to the BIA."); Order, *Branco-Antonio v. Flores*, Civ. No. 18-3506 (CMR), (E.D. Pa. Aug. 18, 2018) (granting TRO and stay of removal for noncitizen awaiting adjudication of BIA motions to stay removal and reopen removal case), *dismissed without prejudice*, Civ. No. 18-5306 (E.D. Pa. Oct. 3, 2018).

Defender Association of Philadelphia
1441 Sansom St.
Philadelphia, PA 19102
T: 267-765-6716
E: LRThompson@philadefender.org

*Pro Bono Attorneys for Plaintiff*
*\*Pro Hac Vice Forthcoming*

## **CERTIFICATE OF SERVICE**

  I hereby certify that I will serve all Defendants in this case by sending true copies of this Motion and the documents in support of this Motion via this Court's CM/ECF system and service will be completed on counsel for Respondents via the CM/ECF system.

| | |
|---|---|
| Date: February 25, 2026 | /s/ James D. Jenkins <br> James D. Jenkins (VSB #96044) <br> P.O. Box 6373 <br> Richmond, VA 23230 <br> T: (804) 873-8528 <br> E: jjenkins@valancourtbooks.com |

20